IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GLADES PHARMACEUTICALS,
LLC,

    Plaintiff,

      v.

BRENDAN J. MURPHY, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:06-CV-0940-TWT

ORDER

    This is an action for copyright infringement and breach of fiduciary duty.  The

Defendants  have filed a variety of counterclaims [Doc. 21].  The action is before the

Court on the Plaintiff's Motion to Dismiss the Counterclaims [Doc. 35].  For the

reasons set forth below, the Motion to Dismiss is GRANTED.

## I. BACKGROUND

    This is the third time that the same parties have filed these claims in or removed

them to this Court.  It is the second time that identical factual issues have been brought

before this Court.  A recitation of the long procedural history of this case is

unnecessary and unwarranted.  In an attempt to counteract the "parties' mutual efforts

to expand this lawsuit beyond its legitimate bounds," Glades Pharm., LLC v. Murphy,

1:04-cv-03817-TWT (N.D. Ga. Dec. 16, 2005), the Court will provide an abridged version of the saga.

The Plaintiff, Glades Pharmaceuticals, LLC ("Glades"), is a limited liability pharmaceutical company that develops, markets, and distributes non-branded, or generic, versions of dermatological products.  Glades is a wholly-owned subsidiary of Stiefel Laboratories, Inc. ("Stiefel"), a privately held corporation incorporated in the state of New York and headquartered in Florida.  The Defendant, Brendan J. Murphy, is a Georgia resident, and served as the President of Glades from 1991 until 2002.  He served as Glades's Vice President of Business Development and Outsourcing from January 2003 until May 2, 2003.  Murphy also served as Stiefel's Vice President of Sales from June 2001 until October 23, 2002.  In 2003, Murphy founded Defendant River's Edge Pharmaceuticals, LLC ("River's Edge"), a limited liability company engaged in the business of developing, marketing, and distributing non-branded dermatological products.

The Plaintiff filed this action for copyright infringement and breach of fiduciary duty on April 19, 2006.  The Defendants answered the complaint and have asserted five counterclaims.  The counterclaims include four state law claims seeking: (1) damages or rescission for alleged violations of a 2003 Consulting Agreement between the parties; (2) a declaratory judgment that a 1997 restrictive covenant  between the

parties is unenforceable as overbroad; (3) a declaratory judgment that a noncompetition restrictive covenant between the parties is overbroad; and (4) equitable relief enjoining enforcement of the restrictive covenants.  The request for declaratory relief is filed under both the Federal Declaratory Judgment Act and Georgia Declaratory Judgment Act.  In addition, Murphy and River's Edge assert federal claims of predatory litigation in violation of the Sherman Antitrust Act.

## II. MOTION TO DISMISS STANDARD

A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief.  Fed. R. Civ. P. 12(b)(6); see Conley v. Gibson, 355 U.S. 41, 47 (1957); Linder v. Portocarrero, 963 F.2d 332 (11th Cir. 1992).  In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff, or in this case, the counterclaimant.  See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983).  Generally, notice pleading is all that is required for a valid complaint.  See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).  Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  Id.

## III.  DISCUSSION

The Court has subject matter jurisdiction to address the Defendants' Sherman Act claims under § 1331 federal question jurisdiction.  Thus, it will address those claims first.

### A.  Sherman Antitrust Act

The Defendants allege that Glades violated the Sherman Act in the following two ways: (1) Glades has engaged in "predatory litigation practices intended to injure competition and create an unreasonable barrier to market entry, constituting an unlawful attempt to monopolize, in violation of the Sherman Act, 15 U.S.C. § 1 et seq." (Defs.' Answer and Countercl., at ¶ 47); and (2) Glades is part of an "agreement between DUSA and Plaintiff via Plaintiff's parent is an agreement to exclude Defendant River's Edge from participation in a generic market, which participation would have resulted in lower prices to consumers and profits to River's Edge, the loss of which is a damage resulting from an unlawful attempt to monopolize, in violation of the Sherman Act, 15 U.S.C. § 1 et seq."  (Defs.' Answer and Countercl., at ¶ 49.) The second allegation contends that DUSA and Stiefel agreed to "fail to honor and to withdraw from an agreement reached with Sirius Laboratories, Inc. to license for generic marketing a brand owner supplied generic version of Nicomide."  (Defs.' Answer and Countercl., at ¶ 48.)

Section One of the Sherman Act prohibits contracts, combinations and conspiracies in restraint of trade, while Section Two prohibits monopolization, attempted monopolization and conspiracy to monopolize. Spanish Broadcasting Sys. of Fla., Inc. v. Clear Channel Comm., Inc., 376 F.3d 1065, 1069 (2004). Under both sections of the Act, "an antitrust plaintiff must show harm to competition in general, rather than merely damage to an individual competitor." Id.; see also American Key Corp. v. Cole Nat'l Corp., 762 F.2d 1569, 1579 n.8 (11th Cir. 1985) (describing harm to competition as a "necessary element" of all private antitrust suits under sections 1 and 2). Indeed, "the purpose of the [Sherman] Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market." Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 458 (1993).

The Defendants' barebones allegations cannot survive a motion to dismiss. It is worth noting that the Defendants have not identified what parts of the Sherman Antitrust Act have been violated.[1] Despite this deficiency, it is clear that they have alleged no set of facts that constitute a violation of either Section One or Section Two of the Sherman Act.

---

[1] The Counterclaimants apparently agree that their pleadings leave much to be desired as they "acknowledge that the factual details underlying the claim could have been set forth more fully, . . ." (Defs.' Mem. Opp. Mot. to Dismiss Countercl., at 22).

The Defendants' Section One claims can be quickly dismissed.  Section One provides that: "Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C. § 1.  With the exception of per se illegal restraints on trade, such as price fixing, the finder of fact must determine whether a particular practice "imposes an unreasonable restraint on competition."  State Oil Co. v. Khan, 522 U.S. 3, 10 (1997).  Section One claims that do not allege per se antitrust violations are analyzed under this "rule of reason."  In the Eleventh Circuit, Section One claims analyzed under the rule of reason require a claimant to demonstrate "(1) an anticompetitive effect of the defendant's conduct on the relevant market, and (2) that the conduct has no pro-competitive benefit or justification."  Levine v. Central Fla. Med. Affiliates, Inc., 72 F.3d 1538, 1551 (11th Cir. 1996).

The predatory litigation allegations cannot form the basis of a Section One claim.  Section One applies only to agreements between two or more businesses.  Fisher v. City of Berkeley, 475 U.S. 260, 266 (1986) ("[T]here can be no liability under § 1 in the absence of agreement.").  The Defendants do not allege that Glades filed any of its lawsuits as a result of an agreement with another business.  Thus, the predatory litigation claim should be dismissed.

The Defendants' second allegation of a Section One Sherman Act violation is at least more plausible. Yet, it fares no better than the predatory litigation claim. The complaint alleges that DUSA and Glades, via Glades's parent corporation Stiefel, entered into an agreement to "exclude River's Edge" from the generics market.

Glades argues that, as a matter of law, a subsidiary cannot "conspire" with its parent for the purposes of analyzing a Section One claim. (Pl.'s Mot. to Dismiss Countercl., at 16.) The Supreme Court has held that "the coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act." Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 771 (1984). Therefore, a parent company and its wholly owned subsidiary are "incapable of conspiring with each other for purposes of § 1 of the Sherman Act." Id. at 777. The Counterclaimants have not bothered to respond to this argument. Thus, the Section One claims should be dismissed.

Even if Glades did enter into an "agreement" with DUSA directly, the Defendants do not specify the precise nature of the agreement alleged in its complaint or connect it to any particular antitrust theory identified in the case law. The Defendants do not identify any facts suggesting that there is an agreement between the companies, or how this agreement prevents competition in the market. Baldly asserting that an agreement exists without alleging facts to support this claim is not

enough to survive a motion to dismiss.  See Associated Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir. 1974) (finding that even on a motion to dismiss that "[c]onclusory allegations and unwarranted deductions of fact are not admitted as true . . .").  As the Eleventh Circuit has noted, "[c]onclusory allegations will not survive a motion to dismiss if not supported by facts constituting a legitimate claim for relief." Municipal Utils. Bd. of Albertville v. Alabama Power Co., 934 F.2d 1493, 1501 (11th Cir. 1991) (punctuation omitted).  The complaint requires Glades to guess at whether it is being accused of entering into a horizontal price fixing agreement or any other type of an arrangement that might lock River's Edge out of the market.

Furthermore, the counterclaim fails to allege sufficient anticompetitive effect in a relevant market, a critical component of any antitrust claim.  A bald assertion of "harm to competition" is insufficient to state a claim upon which relief can be granted. To avoid a motion to dismiss, the Defendants "must have pleaded enough data so that each element of the alleged antitrust violations can be properly identified, and which data, if accepted as true, satisfy these elements." Valet Apartment Serv., Inc. v. Atlanta Journal and Const., 865 F. Supp. 828, 831 (N.D. Ga. 1994) (citing Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., 711 F.2d 989, 996 (11th Cir. 1983)).  The only allegation of damage to competition is the vague assertion that River's Edge's participation in the Nicomide market would have

resulted in "lower prices to consumers." (Defs.' Answer and Countercl., at ¶ 49.) The complaint makes no mention of how many competitors are in the Nicomide market or why River's Edge's entrance into the market would "reduce prices."

The deficiency in the pleadings is compounded by the Defendants' failure to describe the relevant market in which the supposedly anticompetitive effects took place. The counterclaim fails to allege the relevant geographic market, although it does assert that the market impacted is one that includes the "generic version of Nicomide." (Defs.' Answer and Countercl., at ¶ 48.) The Defendants' attempt to remedy their initial failure to identify the geographic market by arguing that "it is unlikely that any geographic market other than the United States could be plausible." (Defs.' Mem. Opp. Mot. to Dismiss Countercl., at 23.) But in the same breath that it argues that the United States is the only plausible geographic market, it argues that Stiefel's entry into partnership with DUSA (outlined in Exhibit C), as well as DUSA's recent termination of an effort to acquire Sirius, provides a specific example of the relevant market. The Court, however, cannot help but take judicial notice of the fact that Exhibit C refers to an agreement between DUSA and Stiefel to sell a product in Latin America - not the United States. If the Defendants have attempted to confuse the Court, they have succeeded. The Section One claims should be dismissed.

Section Two of the Sherman Act punishes those who "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations. . . ."  15 U.S.C. § 2.  To state a claim for attempted monopoly under Section Two, a claimant must plead facts showing that (1) "the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."  Spectrum Sports, 506 U.S. at 456.  Section Two claims require allegations of harm within a "relevant" market with a specific set of geographical boundaries.  See U.S. Anchor Mfg., Inc. v. Rule Indus., Inc., 7 F.3d 986, 995 (11th Cir. 1993).  The alleged monopolist must have enough potential or actual power in the "relevant" market in order to harm competition.  Murphy and River's Edge argue that Glades's predatory litigation practices are "intended to injure competition," and are an unlawful "attempt to monopolize."  (Defs.' Answer and Countercl., at ¶ 47.)  This Section Two claim should be dismissed.

Even if the countercomplaint could be fairly read to allege Glades's "specific intent" to monopolize, there are no allegations of a "dangerous probability of achieving monopoly power."  See Spectrum Sports, 506 U.S. at 456.  The "dangerous probability element requires the definition of the relevant markets and an examination

of market power -- the market shares of participants in those markets, or similar data -- that could support a conclusion of 'dangerous probability of monopolization.'" Valet Apartment Serv., Inc., 865 F. Supp. at 832 (N.D. Ga. 1994).  The counterclaim provides no such factual allegations.  It does not identify the number of actual or potential competitors, or allege that Glades's predatory litigation carries a dangerous probability -- or any probability -- of monopolization.  This factual deficiency is enough to dismiss the Section Two, predatory litigation counterclaim.

Furthermore, the counterclaim fails to plead sufficient anticompetitive injury. There is no allegation of harm to competition as a result of Glades's alleged predatory litigation.  Although the counterclaim does allege that DUSA and Stiefel's agreement affected consumer prices, there is no such allegation with regards to the effect of Glades's litigation practices.  (Defs.' Answer and Countercl., at ¶ 49.)  Conduct that injures individual firms rather than competition in the market as a whole does not violation Section Two.  Spanish Broadcasting Sys. of Fla., Inc., 376 F.3d at 1069. The countercomplaint does not even allege that River's Edge was injured as a result of Glades's predatory litigation.  "Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws." Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 225 (1993).  Furthermore, the Counterclaimants' failure to adequately identify

the relevant market, which was explained in the Court's Section One analysis above, also dooms their efforts to avoid dismissal.

Glades is also entitled to *Noerr-Pennington* immunity from the predatory litigation claims.  See <u>Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.</u>, 508 U.S. 49, 60-61 (1993).  This doctrine holds that a litigant cannot incur antitrust liability for the filing of allegedly frivolous lawsuits unless the litigation is "objectively baseless."  <u>Id.</u>  Normally, it would be premature to rule on this issue at the pleadings stage, and its ultimate resolution might oftentimes be more appropriate at the summary judgment stage.  The Defendants, however, have failed to make allegations sufficient to pierce Glades's *Noerr-Pennington* immunity.

The Counterclaimants allege (1) that Glades, in one of the many suits between the parties, knowingly and wrongfully removed the case from state to federal court, and (2) that Glades's "multiplicitous litigation" was intended to injure competition. (Defs.' Answer and Countercl., at ¶¶ 42-49.)  Glades responded by attaching documentation of Judge Carnes's decision on the issue of whether removal was frivolous.  The Defendants do not respond to this argument at all.  Nor do they respond to any of Glades's arguments except to quote a Ninth Circuit decision that outlines the various types of predatory litigation claims that might pierce *Noerr-Pennington* immunity.  Murphy and River's Edge argue that they brought the

"second" type of antitrust claim outlined in the Ninth Circuit decision of <u>Freeman v.</u> <u>Lasky, Haas & Cohler</u>, 410 F.3d 1180, 1184 (9th Cir. 2005).  This type of claim focuses not on whether some of the multiple suits were "objectively baseless," but on whether the suits were filed "pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival."  <u>Id.</u>  The counterclaim, however, makes no allegations that Glades has a "policy of starting legal proceedings without regard to the merits."  <u>Id.</u>  Saying that Glades has filed many lawsuits is not the same thing as alleging that Glades has a policy of filing multiple suits to injure competition.  Thus, Glades is entitled to *Noerr-Pennington* immunity with regards to the predatory litigation, Section Two claims.

The Defendants also allege that Stiefel's agreement with DUSA violates Section Two of the Sherman Act.  As noted above, the Defendants have failed to allege a dangerous probability of gaining monopoly power, and failed to identify the relevant market in which such power would be exercised.  Again, Murphy and River's Edge do not bother to respond to Glades's specific and detailed argument that the Defendants' pleadings are deficient.  Thus, all of the Sherman Act claims should be dismissed.

B.  The State Law Claims

This Court has supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . ." 28 U.S.C. § 1367(a).  This requirement means that the Court may only exercise supplemental jurisdiction over state law claims that share a "common nucleus of operative fact with a substantial federal claim." Milan Exp., Inc. v. Averitt Exp., Inc., 208 F.3d 975, 980 (11th Cir. 2000) (citations omitted).  As will be detailed below, none of the state law claims arise out a common nucleus of operative fact, and the Court, in its discretion, dismisses them without prejudice. Indeed, the state law claims involve complex issues of state law and are not ideally addressed by this Court.

The original complaint alleges that Murphy and River's Edge violated federal copyright laws by using information associated with a Glades Power Point presentation, and that Murphy and River's Edge breached fiduciary duties by diverting various business opportunities.  The counterclaims have little in common with the facts alleged in Glades's original complaint for relief.

Count One of the counterclaims alleges that Glades violated a Consulting Agreement between the parties by failing to make monthly payments to Murphy.  The failure to pay Murphy does not share a common nucleus of operative fact with the

claims in Glades' complaint.  Not only is the failure to pay Murphy different from the fact that Murphy allegedly stole business opportunities from Glades, but resolving the claim involves an application of state contract law.  The Court is skeptical of Murphy and River's Edge's argument that judicial economy demands that I resolve this issue now.  This exact claim is pending before a state court.  In addition, Count One also alleges that Glades breached the Consulting Agreement because of a July 7, 2003 email from Stiefel.  This event does not share a common nucleus of operative fact with the ones alleged in the complaint, and resolving the claim requires addressing complex issues of state law.  Therefore, the Court does not have supplemental jurisdiction over Count One.

Counts Two and Three request declaratory relief stating that a Confidential Disclosure Agreement between the parties is over broad.  At the outset, the Federal Declaratory Judgment Act ("DJA") cannot underwrite jurisdiction for this claim.  The DJA is procedural in nature, and does not expand the jurisdiction of the federal courts. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950); Borden v. Katzman, 881 F.2d 1035, 1037 (11th Cir. 1989) ("[A] suit brought under the Act must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question.").  Thus, the Court must find supplemental jurisdiction before it can adjudicate the merits of this claim.

Murphy and River's Edge request an interpretation of the Confidential Disclosure Agreement ("CDA") on the grounds that it would be operative if the Consulting Agreement were invalidated.  Even if the CDA were invalidated, Murphy and River's Edge demand an interpretation of a restrictive covenant that has nothing to do with the factual issues that the complaint raises.  That is, did Murphy and River's Edge violate federal copyright laws and duties of loyalty to Glades? Resolving that question does not require resolving the scope of a separate document that defines other restrictions upon Murphy and River's Edge's behavior.  In addition, the claims involve only issues of state law.  Thus, the Court has no supplemental jurisdiction over these claims.  Count Four seeks declaratory and injunctive relief from enforcement of the covenants.  The Court has no jurisdiction to adjudicate this claim for the same reasons it has no jurisdiction to adjudicate Counts Two and Three.

## IV. CONCLUSION

For the reasons stated above, the Plaintiff's Motion to Dismiss the Counterclaims [Doc. 35] is GRANTED.  The counterclaims are dismissed without prejudice.

SO ORDERED, this 12 day of December, 2006.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge